UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANGELIQUE FURR, )<br>)<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>    *Defendant* ) | Civil No. 08-434-P-S |

### REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal contends that the administrative law judge erred by failing to obtain necessary testimony from a vocational expert, by making findings inconsistent with those of state-agency psychologist reviewers, and by failing to give good reasons for rejecting the conclusions of a psychiatrist who treated her. I recommend that the court vacate the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act only through March 31, 2003, Finding 1, Record

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 8, 2009, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

at 14; that she suffered from the severe impairments of an anxiety disorder and a depressive disorder, neither of which, considered alone or in combination, met or medically equaled the criteria of any of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3 & 4, *id*. at 14-15; that she had the residual functional capacity to perform a full range of work at all exertional levels, provided the work is unskilled, with a specific vocational preparation code of two or less, and low stress, defined as requiring only occasional judgment, occasional decision-making, occasional changes in work setting, and occasional interaction with co-workers and supervisors, but no public interaction, Finding 5, *id*. at 16; that, given her age (30 years old at the time of alleged onset, a younger individual), general equivalency diploma, work experience, and residual functional capacity, using certain sections of Appendix 2 to 20 C.F.R. Part 404, Subpart P as a framework for decision-making, there are jobs that exist in significant numbers in the national economy that the claimant can perform, Findings 7-10, *id*. at 20; and that the plaintiff therefore had not been under a disability, as that term is defined in the Social Security Act, at any time from June 15, 2000, the alleged date of onset, through the date of the decision, Finding 11, *id*. at 21. The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

      The standard of review herein is whether the commissioner's determination is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A.  Vocational Testimony

The plaintiff contends that the administrative law judge was not entitled to rely on the testimony of the vocational expert at the hearing because he "mischaracterized" the nature of the mental limitations that he included in his hypothetical question to the vocational expert. Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 9) at [2]-[5]. Specifically, she asserts that the administrative law judge "failed to properly translate the limitation to 'simple' work contained in the state agency mental health RFC opinions[.]" *Id.* at [2].

The hypothetical question at issue is the following:

> A younger individual with a GED with no physical limitations capable of SVP2 work, capable of low-stress work defined as occasional judgment, occasional decision-making, requiring no more than occasional changes in the work setting. Further defined as occasional supervision and occasional interaction with coworkers. No public interaction other than incidental occasional.

Record at 43.  This is virtually identical to the residual functional capacity assigned to the plaintiff by the administrative law judge in his opinion.  *Id*. at 16, 20 (GED).

Any error, it would seem, therefore lies in the administrative law judge's finding rather than in his hypothetical question.  The plaintiff contends that the error occurred when the administrative law judge equated "an unskilled SVP level" to a limitation to "simple" work.  Itemized Statement at 3.  She points out that when her representative asked the vocational expert to substitute a General Educational Development ("GED") level of 1 for the Specific Vocational Preparation ("SVP") level of 2 included in the hypothetical question, the vocational expert testified that the occupational base available to the plaintiff would be reduced below 25% of the unskilled occupational work base and that the only specific job mentioned in the administrative law judge's opinion, that of a cleaner, Record at 20, would be eliminated.[2]  *Id*. at 44.

The first problem for the plaintiff with this argument is that the administrative law judge does not use the word "simple" to describe any limitations on the plaintiff's residual functional capacity.  The only use of that term is by the plaintiff's representative in formulating an alternative hypothetical question to the vocational expert.  *Id*. at 44.  The administrative law judge found that the plaintiff had "mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; and moderate limitations in maintaining concentration, persistence, or pace," *id*. at 15; that "[g]lobal assessment of functioning scores of 55 to 62 have indicated commonly moderate to mild limitations in the claimant's ability to function (Exhibits 7F[] and 15F)," *id*. at 17; and that she "is capable of performing unskilled work with a specific vocational preparation code of two or less, and low stress work which is

---

[2] As counsel for the commissioner pointed out at oral argument, this testimony is wrong.  The cleaner position, with the DOT code 323.687-014 as specified in the administrative law judge's opinion, Record at 20, has a GED reasoning level of 1.  Dictionary of Occupational Titles (U.S. Dep't of Labor 4th ed. 1991) § 323.687-014.  It therefore would still be available to the plaintiff under the altered hypothetical question.

defined as requiring only occasional judgment, occasional decision-making, occasional changes in the work setting, and occasional interaction with coworkers and supervisors, but is unable to tolerate public interaction[,]" *id*. at 16. The hypothetical questions posed by the administrative law judge to the vocational expert similarly refer to SVP 2 and do not mention "simple" work. *Id*. at 43. From all that appears in the record, the administrative law judge did not equate an SVP level of 2 with "simple work" at all.

It is true, as the plaintiff asserts, Itemized Statement at [2]-[3], that the state-agency reviewers' opinions, which the administrative law judge found to be "well supported and consistent with the record as a whole[,]" Record at 19, use the word "simple," *id*. at 284, 364. However, in both cases, that word was used in reference to the "Summary Conclusions" section of the Mental Residual Functional Capacity Assessment Form on which the reports are made. That section describes four mental activity categories – understanding and memory, sustained concentration and persistence, social interaction, and adaptation – each of which comprises from three to eight specific items and asks the reviewer to rate each item on a chart from "not significantly limited" to "markedly limited" and including check boxes for "no evidence of limitation" and "not ratable on available evidence." *Id*. at 282-82, 362-63. The first two categories include items involving "simple instructions" and "detailed instructions." *Id*. at 282, 362. One reviewer says that the plaintiff can "sustain 2-hour blocks at simple tasks at a consistent pace over a normal work day/week." *Id*. at 284. The other says that the plaintiff "is able to understand and remember simple instructions" and can carry out "[s]imple tasks." *Id*. at 364.

The administrative law judge did not rely only on these reviewers. *Id*. at 16-19. In particular, Exhibit 7F, the report of Brian Stahl, Ph.D., a consulting examiner, to which the

5

administrative law judge gave "[g]reat weight," *id*. at 19, included the following findings: the plaintiff could "probably sustain her attention to perform simple repetitive task[s]" when "symptoms are not acute[;]" could "probably understand routine and follow both simple and more complex instructions[;]" could "probably interact sufficiently with co-workers, supervisors and the general public[,]" although her ability to manage the stress and pressure associated with day-to-day work activity "may be variable." *Id*. at 258.

"Specific vocational preparation" is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. Dictionary of Occupational Titles ("DOT") (U.S. Dep't of Labor 4th ed. 1991) Appendix C, Section II. While none of the foregoing expert reports uses the term "simple work," the specific findings of each are more consistent with that concept than with any SVP level.

To be sure, learning the techniques of and acquiring the facility needed for a specific job requirement will involve understanding instructions and performing tasks, but the definition of general educational development -- "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance" -- (with the definition of the GED subcategory of reasoning development Level 1 being "[a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job[,]" DOT Appendix C, Section III) is closer to what these experts reported than any SVP level. *See generally Mead v. Barnhart*, 2004 WL 2580744 (D.N.H. Nov. 15, 2004), at *2.

It may be that the administrative law judge intended his stated limitation to "low stress work which is defined as requiring only occasional judgment, occasional decision-making,

6

occasional changes in the work setting, and occasional interaction with coworkers and supervisors, but . . . unable to tolerate public interaction," Record at 16, to correlate with the state-agency reviewers' and Dr. Stahl's findings, as well as his findings that the plaintiff suffered from moderate difficulties in social functioning and in maintaining concentration, persistence, or pace, *see* Report and Recommended Decision, *Dubriel v. Astrue*, Docket No. 08-1-6-B-W (Docket No. 15), at 8-9, but that is not apparent from his written opinion.

If the administrative law judge cast the plaintiff's mental limitations, based on the expert reports upon which he stated that he relied, in terms of SVP rather than GED, that is an error requiring remand.[3] If he rather cast them in terms of "low stress work," the relationship between that term and the mental limitations needs to be discussed explicitly. It cannot be assumed on this record.

### B. Moderate Mental Limitations

I will address the plaintiff's remaining arguments for the benefit of the parties on remand.

The plaintiff next contends that the administrative law judge's failure to reflect the findings of the state-agency psychologist-reviewers that the plaintiff had moderate difficulties in certain areas of mental limitation requires remand. Itemized Statement at [5]-[6]. Specifically, she refers to their findings that she suffered from moderate limitations in maintaining social functioning and in maintaining concentration, persistence, or pace. Record at 278, 358. She contends that the former limitation "was either not carried over into the" residual functional capacity assigned by the administrative law judge or "was done . . . incompletely or inconsistently." Itemized Statement at [5].

---

[3] The plaintiff also contends that it "is entirely clear" that either the administrative law judge or the vocational expert did not follow the directives of Social Security Ruling 00-4p because the opinion states that the vocational expert's testimony was "consistent with the information contained in the Dictionary of Occupational Titles." Itemized Statement at [5]. To the contrary, on the showing made by the plaintiff, the vocational expert's testimony was consistent with the DOT. The hypothetical question that elicited that testimony is what was incorrect.

However, Social Security law does not require that an administrative law judge adopt explicitly all of the findings of any reviewer, examiner, or treating professional. Nor does it require that he or she identify and reconcile all possible inconsistencies between those individual reports. The only authority the plaintiff cites for this argument, *Maggiani v. Barnhart*, 2004 WL 2378851 (D. Me. Oct. 25, 2004), does not support it. Indeed, in that case Magistrate Judge Cohen observed that "a failure of articulation -- while hardly to be emulated or encouraged – does not constitute reversible error when . . . the court nonetheless readily can discern substantial support for the administrative law judge's findings in the Record." *Id*. at *3 n.3. In addition, contrary to the plaintiff's suggestion, Itemized Statement at [5], the administrative law judge's findings on this issue are supported by evidence in the record that did not require him to translate raw medical data into restrictions.

The plaintiff takes nothing by this argument.

### C.  Dr. Engeriser's Statement

The plaintiff's final argument is that the administrative law judge wrongly rejected the opinion of J. Luke Engeriser, M.D., her treating psychiatrist. Itemized Statement at [6]-[10]. With respect to Dr. Engeriser's notes and a Medical Source Statement of Ability to Do Work-Related Activities (Mental) that he completed, Record at 376-77, the administrative law judge wrote:

> [L]ittle weight has been given to the May 17, 2008, opinion of J. Luke Engeriser, M.D., that the claimant has marked limitations in her ability to maintain attention and concentration sufficient to perform work tasks throughout an eight-hour workday; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination or proximity to others without being distracted by them; respond appropriately to changes in a work setting; and complete a normal workday or work week without interruptions from psychologically based symptoms and perform at consistent pace without an unreasonable number and length of rest periods (Exhibit

8

> 16F), because the degree of limitation stated is not supported by the objective evidence, and is inconsistent with the good mental status noted on multiple examinations. It is also inconsistent with the claimant's own statements to physicians that her medications were helping, the claimant's functional activities of daily living, and with the findings of the state agency physicians.

*Id.* at 19.[4]

This statement meets the requirement, albeit minimally so, that the administrative law judge give good and specific reasons for the weight assigned to a treating medical source's opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2009), at 114-15.[5] It incorporates, for example, the opinion's earlier recitation of multiple instances of examination findings that the plaintiff enjoyed good mental status. *See* Record at 17 (the plaintiff "has consistently been found to be alert, oriented, logical, coherent, and goal directed with an appropriate affect on examinations, and she has been found to have good attention and concentration on multiple occasions (Exhibits 2F, 4F, 5F, 7F, 11F, 15F, and 16F)"; no evidence of psychiatric hospitalization; "Medical records demonstrate that while compliant with her treatment regimen, the claimant's impairments have improved (Exhibits 4F, 7F, 11F, and 15F)"; the plaintiff did not seek treatment between June, 2006 and October, 2007, because her symptoms decreased during this time; she reported in 2005 and 2006 that medications had helped her; in September 2006 she said that she was doing well overall; she was much better on Lexapro in October 2007; her mood

---

[4] Contrary to the plaintiff's assertion that "[a]s to the state agency review, [the administrative law judge] was simply wrong: Dr. Engeriser's opinions (and supporting notes) were never reviewed by either Dr. Houston or Dr. Lester.[],]" Itemized Statement at [7], the administrative law judge never said that those state-agency psychologists had reviewed either Dr. Engeriser's opinions or his notes. He said only that those opinions were inconsistent with the findings of the state agency reviewers, Record at 19, which is correct.

[5] Contrary to the plaintiff's suggestion, Itemized Statement at [8]-[9], it is not necessary that the administrative law judge first discuss whether he will give the opinion of a treating source controlling weight. When, as here, the administrative law judge states that he is giving that opinion "little weight," Record at 19, it would be an empty exercise to send the case back to the commissioner so that the administrative law judge could state the obvious fact that he did not give the opinion controlling weight. Similarly, the reasons for giving such an opinion "little" weight can also serve as the reasons for not giving the opinion controlling weight.

was found to be relatively stable in March 2008, and her symptoms continued to improve as of April 2008; medical records show that her symptoms have decreased with medication changes since August 2007). The opinion also discusses the plaintiff's activities of daily living and contrasts them with her own reports of psychological difficulties. *Id*. at 18.

The plaintiff finally suggests that the administrative law judge's references to a lack of objective evidence and a lack of pathology on mental status exams "necessarily required him, as a lay adjudicator, to impermissibly assess raw medical data." Itemized Statement at [9]. First, the opinion contains sufficient discussion of the medical evidence in the record independent of these two references to support the administrative law judge's conclusions. Second, observing a lack of evidence on a particular point does not equate to "assess[ing] raw medical data." It is rather a statement that medical data, raw or otherwise, is lacking, an observation that administrative law judges must make on occasion.

The plaintiff is not entitled to remand on the basis of her third challenge to the decision.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 15th day of October, 2009.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge